# Matter of Tatiana ACEIJAS-QUIROZ, Beneficiary of a visa petition filed by Aubrey Edward Haverly, Petitioner

*Decided May 20, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

In adjudicating cases involving the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, the Board of Immigration Appeals lacks jurisdiction to review a "no risk" determination by the United States Citizenship and Immigration Services, including the appropriate standard of proof to be applied.

FOR PETITIONER: Dan R. Larsson, Esquire, Bend, Oregon

FOR THE DEPARTMENT OF HOMELAND SECURITY: Margaret A. Rosenast, Associate Counsel

AMICUS CURIAE: American Immigration Lawyers Association[1]

BEFORE: Board Panel: ADKINS-BLANCH, Vice Chairman; GUENDELSBERGER, Board Member. Dissenting Opinion: MANN, Board Member.

GUENDELSBERGER, Board Member:

In a decision dated July 23, 2010, the Field Office Director ("Director") denied the Petition for Alien Relative (Form I-130) filed by the United States citizen petitioner on behalf of the beneficiary as his spouse. The Director concluded that the petitioner is ineligible to have a visa petition approved under the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 ("Adam Walsh Act"). The petitioner has appealed from that decision.[2] The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The petitioner filed a visa petition on February 24, 2008, to accord his wife immediate relative status under section 201(b)(2)(A)(i) of the

---

[1] Steven W. Manning, Esquire; Ira J. Kurzban, Esquire; Edward F. Ramos, Esquire
[2] During the pendency of the appeal, we requested supplemental briefing to address issues relating to the Adam Walsh Act. We acknowledge and appreciate the briefs submitted by the parties and amicus curiae.

Immigration and Nationality Act, 8 U.S.C. § 1151(b)(2)(A)(i) (2006). On March 16, 2009, the United States Citizenship and Immigration Services ("USCIS") sent the petitioner a request for evidence and notice of intent to deny the petition. The notice informed the petitioner of his apparent ineligibility to petition for his wife based on a conviction for a "specified offense against a minor," as that term is defined in the Adam Walsh Act. Specifically, on December 6, 2004, the petitioner was convicted in Oregon of sexual abuse in the third degree, sexual abuse in the second degree, and contributing to the sexual delinquency of a minor in violation of sections 163.415, 163.425, and 163.435 of the Oregon Revised Statutes. The petitioner was informed that he could overcome his apparent ineligibility with evidence demonstrating that his convictions were not for a "specified offense against a minor" or, in the alternative, that he poses "no risk" to the beneficiary.

On June 9, 2009, the petitioner replied with additional documents and arguments. After considering those submissions, the Director denied the visa petition, concluding that the petitioner's offenses qualified as "specified offense[s] against a minor" under the Adam Walsh Act and that the petitioner had failed to show "beyond any reasonable doubt" that he poses no risk to the safety and well-being of the beneficiary to overcome his statutory ineligibility.

## II. ADAM WALSH ACT

The stated purpose of the Adam Walsh Act is "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Adam Walsh Act, 120 Stat. at 587. The issues raised in this appeal involve title IV, "Immigration Law Reforms to Prevent Sex Offenders from Abusing Children."[3] Specifically, section 402(a)(2) of the Adam Walsh Act, 120 Stat. at 622, amended section 204(a)(1) of the Act, 8 U.S.C. § 1154(a)(1) (2006), by adding a provision barring a United States citizen who has been convicted of a "specified offense against a minor" from having a family-based visa petition approved unless the Secretary of Homeland Security, in the Secretary's "sole and

---

[3] Because title IV of the Adam Walsh Act does not include a specific effective date, the date of its enactment, July 27, 2006, is the effective date. *See Matter of Soriano*, 21 I&N Dec. 516, 519 (BIA 1996) (noting that the lack of an effective date for legislation indicates that the law should be effective on the date of passage).

unreviewable discretion," determines that the citizen poses "no risk" to the alien beneficiary. Section 204(a)(1)(A)(viii)(I) of the Act.[4]

## III. ISSUES

The petitioner does not challenge the determination that he has been convicted of a "specified offense against a minor," as defined by section 111(7) of the Adam Walsh Act, 120 Stat. at 592 (codified as amended at 42 U.S.C. § 16911(7) (2006)). The approval of his visa petition is therefore barred by section 204(a)(1)(A)(viii)(I) of the Act unless he can establish that he poses "no risk" to the safety and well-being of the beneficiary.

The parties disagree regarding the appropriate standard of proof to be applied to this "no risk" determination. The petitioner argues that the preponderance of the evidence standard should be applied and that the Director erred in requiring proof "beyond a reasonable doubt" that he poses no risk to the beneficiary. The parties also disagree on the threshold issue of the Board's jurisdiction to address the appropriate standard of proof to be applied by the Director in making this determination. As discussed below, we conclude that Congress has entrusted the "no risk" determination entirely to the Department of Homeland Security ("DHS"), including the standard of proof to be applied.

## IV. ANALYSIS

The petitioner contends that the "beyond a reasonable doubt" standard is typically reserved for criminal prosecutions where the Government must meet a heavy burden in order to protect liberty interests of individuals charged with criminal conduct. Noting that the long-established standard of proof in civil cases and visa petition proceedings is proof by a preponderance of the evidence, the petitioner points out that no statutory or regulatory provision explicitly empowers the USCIS to raise the standard of proof in Adam Walsh Act cases to require the petitioner to prove beyond a reasonable doubt that there is no risk to the beneficiary.[5] He suggests that

---

[4] Section 204(a)(1)(B)(i) of the Act contains a similar prohibition relating to lawful permanent resident petitioners.

[5] In a 2007 policy memorandum, the Associate Director of Domestic Operations for the USCIS directed that a "beyond a reasonable doubt" standard should be applied in making the "no risk" determination in individual cases, explaining the following:

> To avoid denial of a petition or the revocation of a prior approval, a petitioner who has been convicted of a specified offense against a minor must submit
>
> (continued . . .)

the practical effect of applying this heightened standard is that petitioners will be precluded from demonstrating "no risk" in nearly all cases. He also argues that in his case, the Director disregarded the positive factors, misstated the record, and did not meaningfully weigh his evidence or properly analyze whether he poses a risk to his wife.

The parties agree that the Board has jurisdiction in Adam Walsh Act cases to review determinations regarding general eligibility requirements, including whether the required relationship has been established and whether an offense qualifies as a "specified offense against a minor." They disagree, however, as to whether Congress' placement of the "no risk" determination in the DHS's "sole and unreviewable discretion" precludes us from reviewing such questions as the appropriate standard of proof to be applied.

As a threshold matter then, we must determine the extent of our jurisdiction over these issues. The Board has limited jurisdiction to review certain decisions of officers of the DHS under the authority delegated by the Attorney General. 8 C.F.R. § 1003.1(b)(5) (2013). We review de novo all questions arising in appeals from decisions of USCIS officers. 8 C.F.R. § 1003.1(d)(3)(iii). However, pursuant to the Adam Walsh Act, Congress has placed "sole and unreviewable discretion" of the "no risk" determination with the Secretary of the DHS, who, in turn, has delegated this authority to the USCIS. Section 204(a)(1)(A)(viii)(I) of the Act. *See generally* 8 C.F.R. § 2.1 (2013). As discussed below, we conclude that we lack jurisdiction to review the USCIS's determination regarding the appropriate standard of proof to be applied in the "no risk" determination. It follows that we have no authority to review the application of this standard by the Director in this case.

In considering our jurisdiction, we begin with the language of the Adam Walsh Act. As with all cases involving statutory construction, we assume that the legislative purpose is expressed by the ordinary meaning of the words Congress chose to use. *Matter of A-A-*, 20 I&N Dec. 492, 495 (BIA 1992) (citing *INS v. Cardozo-Fonseca*, 480 U.S. 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984)). When the language of the controlling statute is plain, there is no issue of interpretation because we

_____

> evidence of rehabilitation and other relevant evidence that clearly demonstrates, *beyond any reasonable doubt*, that he or she poses no risk to the safety and well-being of his or her intended beneficiary(ies).

Memorandum from Michael Aytes, Assoc. Dir., Domestic Operations, to USCIS officials, at 5 (Feb. 8, 2007) (emphasis added), *available at* http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/adamwalshact020807.pdf.

"must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

The provision relevant to the Board's jurisdiction in this case is section 204(a)(1)(A)(viii)(I) of the Act, which states the following:

> Clause (i) [specifying a citizen's eligibility to file for a visa petition on behalf of a spouse or child] shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, *unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk* to the alien with respect to whom a petition described in clause (i) is filed.

(Emphasis added.)

In its brief, amicus asserts that Congress' assignment of "sole and unreviewable discretion" was intended to shield the "no risk" determination from judicial review, while leaving in place the Board's authority to review de novo all issues in family-based visa petition appeals, including the "no risk" determination. We disagree. First, when Congress has acted to limit judicial review under the Act, it has expressly referred to court jurisdiction, stating that "*no court* shall have jurisdiction to review" certain determinations, orders, decisions, judgments, or actions. *See, e.g.*, sections 242(a)(2)(A)−(C) of the Act, 8 U.S.C. §§ 1252(a)(2)(A)−(C) (2012) (emphasis added) (relating to specified determinations regarding the removal of arriving aliens and claims of fear of persecution, denials of discretionary relief, and specified removal orders against criminal aliens). The relevant provision of the Adam Walsh Act does not mention court review, but it assigns the "no risk" determination solely to the Secretary of the DHS, to the exclusion of other executive agencies.

Additionally, when Congress has used the "sole and unreviewable discretion" language in other situations, it has done so in order to vest ultimate responsibility for the determination in one Federal agency in situations where there might otherwise be overlapping or shared agency responsibility. For example, in section 212(d)(3)(B) of the Act, 8 U.S.C. § 1182(d)(3)(B) (2012), Congress provides for the Secretary of State or the Secretary of Homeland Security to have "sole unreviewable discretion" to waive the application of the terrorism ground of inadmissibility "after consultation with the Attorney General" and the other Secretary. Similarly, section 235(b)(1)(A)(iii) of the Act, 8 U.S.C. § 1225(b)(1)(A)(iii) (2012), which pertains to the designation of additional classes of aliens subject to expedited removal, places "sole and unreviewable discretion" in the Attorney General. Thus, Congress has used the "sole and unreviewable discretion" language in other immigration provisions to specify the

Government agency responsible for making a final and unreviewable determination vis-à-vis other governmental agencies that might otherwise have such responsibility. We therefore reject the suggestion that the "sole and unreviewable discretion" language was intended only to limit judicial review.

The petitioner argues that even if Congress' assignment of the "no risk" determination to the DHS is construed as precluding the Board from reviewing the discretionary aspects of that determination, it nevertheless leaves jurisdiction with the Board to review legal issues underlying the exercise of discretion. We find that the term "sole and unreviewable discretion" plainly reflects Congress' intent that the DHS should have the sole authority to establish a framework for USCIS adjudicators to use in making the "no risk" discretionary determination in individual cases. Establishment of such a framework is essential to the uniform application of the law to the individual determinations of risk that will be made by USCIS officials. The application of the appropriate standard of proof is part and parcel of the ultimate exercise of discretion delegated to the DHS. There is no precedent for the Board to review any part of a discretionary determination by the USCIS in visa petition proceedings, so this is not a departure from current standards. For this reason, we find that the standard of proof necessarily falls within the scope of the DHS's sole responsibility for the "no risk" determination.

Since its creation in 2003, the DHS has existed separate and apart from the Department of Justice.[6] Although the DHS and Department of Justice continue to have shared responsibility in immigration-related matters, Congress has delineated authority and responsibility between the agencies, with certain functions now accorded to the DHS as a separate and distinct agency from the Department of Justice. *Compare* section 103(a)(1) of the Act, 8 U.S.C. § 1103(a)(1) (2012) (powers and duties of the Secretary of Homeland Security), *with* section 103(g)(1) of the Act (authorities and functions of the Attorney General). Congress created the DHS to better integrate Federal, State, and local government efforts to ensure national security. *See generally* 6 U.S.C. §§ 111(b)(1), 112(c) (2012).

In passing the Adam Walsh Act, Congress indicated the high importance it placed on protecting children from sexual exploitation and violent crime. A Senate sponsor of the Adam Walsh Act described it as "the most comprehensive child crimes and protection bill in our Nation's

---

[6]   On November 25, 2002, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, created the Department of Homeland Security as a distinct agency separate from the Department of Justice.

history." 152 Cong. Rec. S8012-02 (daily ed. July 20, 2006) (statement of Sen. Orrin Hatch), *cited in United States v. Tom*, 565 F.3d 497, 499 (8th Cir. 2009). In this context, we interpret Congress' allocation of responsibility for the "no risk" determination to the DHS as an allocation of sole authority, unreviewable by the Board or other executive branch agencies, to construct the legal framework within which such discretionary determinations are to be made, including the appropriate standard of proof.

The petitioner and amicus rely on Federal court cases that draw a distinction between discretionary determinations and purely legal issues when applying jurisdictional limits on review of agency decisions. *See, e.g.*, *Al Ramahi v. Holder*, 725 F.3d 1133, 1138 n.2 (9th Cir. 2013) (collecting cases). However, this distinction is based on statutory language that explicitly preserves court review of legal issues when judicial review authority has otherwise been eliminated. *See* section 242(a)(2)(D) of the Act (mandating that specified provisions eliminating judicial review shall not be "construed as precluding review of constitutional claims or questions of law raised upon a petition for review").

There is no comparable provision in the Adam Walsh Act that reserves purely legal issues underlying the DHS's "no risk" determination for review by the Board. Had Congress intended to make such a distinction in the Adam Walsh Act, it could have specified that the "no risk" determination was delegated to the DHS only in regard to the discretionary aspects of that determination. Were such a distinction intended, however, there would be many other legal challenges to "no risk" determinations, including whether the Director considered all the evidence, the legal analysis was sufficient, and the evidence ultimately met the requisite burden of proof. Such a bifurcated approach to Board review of the "no risk" determination would conflict with Congress' plain language delegating this determination to the DHS's "sole and unreviewable discretion."

We do not have review authority comparable to that exercised by the courts under the Administrative Procedure Act, ch. 324, § 10(e), 60 Stat. 237, 243−44 (1946) (codified as amended at 5 U.S.C. § 706 (2012)). Unlike Article III courts, we acquire our jurisdiction solely through 8 C.F.R. § 1003.1(b), and its scope may be limited by a legislative enactment of Congress. The Adam Walsh Act reserves to the DHS the agency discretion to establish the parameters for adjudicating the "no risk" determination. We find that this delegation of agency authority precludes our review of both the legal and discretionary aspects of the "no risk" determination. We will therefore dismiss the petitioner's appeal.

We conclude by noting that the petitioner and amicus have raised significant issues concerning the application of a "beyond a reasonable

doubt" standard of proof to the Adam Walsh Act "no risk" determination. Ordinarily, in visa petition proceedings, the petitioner is required to demonstrate eligibility for the benefit sought under a "preponderance of the evidence" standard. *See Matter of Pazandeh*, 19 I&N Dec. 884, 887 (BIA 1989); *Matter of Soo Hoo*, 11 I&N Dec. 151, 152 (BIA 1965); *see also Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010) (stating that the preponderance of evidence standard applies except where a different standard is specified by law). Moreover, a heightened standard of review is generally applied by legislation, *see, e.g.*, section 240(c)(2)(A) of the Act, 8 U.S.C. § 1229a(c)(2)(A) (2012) (providing that an applicant for admission must prove that he or she is "clearly and beyond doubt" entitled to be admitted), or by regulation promulgated after public notice and comment, *see, e.g.*, 8 C.F.R. § 1212. 7(d) (2013) (providing that a violent offender may be granted a section 212(h)(2) waiver of inadmissibility by "clearly demonstrat[ing]" that denial would result in the elevated level of "exceptional and extremely unusual" hardship).

If we had jurisdiction to determine the standard of proof for the "no risk" determination, we would find it appropriate to consider such matters as the evidentiary difficulties involved and the individual and governmental interests at stake. However, as discussed above, we lack jurisdiction to resolve this issue under our limited review authority.

To the extent that the petitioner has raised arguments challenging the constitutionality of the Adam Walsh Act provision at issue in this case, we may not, as a general matter, entertain constitutional challenges to provisions of the immigration laws. *See Bagues-Valles v. INS*, 779 F.2d 483, 484 (9th Cir. 1985); *Matter of Fuentes-Campos*, 21 I&N Dec. 905, 912 (BIA 1997).

Accordingly, the petitioner's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

*DISSENTING OPINION*: Ana M. Mann, Board Member

I respectfully dissent.

I would hold that the Board retains jurisdiction to review the legal standard applied by the Secretary of Homeland Security to the "no risk" determination. The term "sole and unreviewable discretion" reflects Congress' intent that the Field Office Director ("Director") should have the sole authority to review the petitioner's evidence and to make a binding discretionary determination that the petitioner poses "no risk" to the beneficiary. However, the proper evidentiary standard to be applied is purely a question of law that is within our expertise to decide. It is also a

matter that is within our statutory authority to address in interpreting the Immigration and Nationality Act and its accompanying regulations.

The Federal regulations explicitly provide that "[t]he Board may review all questions arising in appeals from decisions issued by Service officers *de novo*." 8 C.F.R. § 1003.1(d)(3)(iii) (2013). In cases involving the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 ("Adam Walsh Act"), the appropriate standard of proof to apply is a pure question of law, which is within the scope of our review. Therefore, although Congress gave the Secretary unfettered discretion to make "no risk" determinations free from review, absent contrary legislative intent I would find that Congress did not divest us of our understood authority to review de novo "all [other] questions," including, but not limited to, pure questions of law. *Id.* Under section 103(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1103(a)(1) (2012), a determination by the Board "with respect to all questions of law shall be controlling." *See Matter of Ruiz-Massieu*, 22 I&N Dec. 833, 842−46 (BIA 1999) (finding that the Attorney General may not review a determination by the Secretary of State on a question of foreign policy, but that the Secretary must set forth a facially reasonable basis for a determination).

The United States Citizenship and Immigration Services ("USCIS") has employed the standard of "beyond a reasonable doubt," which is neither authorized under the Adam Walsh Act nor the Immigration and Nationality Act. The USCIS has not implemented regulations interpreting the Adam Walsh Act. Rather, it simply states that based on the nature of the offenses to which the Adam Walsh Act relates and the potential risk of harm to the intended beneficiaries, it will interpret the "no risk" language of the statute to require a higher level of evidence than that required in general visa petition cases like marriage fraud cases. While I agree with the importance of the interests at stake in these cases, the Secretary's use of this standard of proof goes beyond the express terms of the Immigration and Nationality Act and the Adam Walsh Act.

In section 402(a) of the Adam Walsh Act, 120 Stat. at 622−23, Congress imposed a heavy burden on petitioners to prove that they have *not* been convicted of a "specified offense against a minor" and, if they fail to meet that burden, to prove that they would pose *no* risk to the beneficiary in order to merit a favorable exercise of the Secretary's discretion. These statutory hurdles are substantial for a petitioner to surmount. Thus, the legitimate aims of the Adam Walsh Act would not necessarily be furthered by imposing the kind of burden of proof usually reserved for the Government to meet in criminal matters.

The USCIS argues that "the 'preponderance of the evidence' standard is not inviolable within visa petitions adjudications." For example, the USCIS points out that in marriage fraud cases, a petitioner must establish by "clear and convincing evidence" that the beneficiary did not engage in a prior marriage fraud. In addition, in the context of the nondisclosure of a relative on a previous visa petition, a petitioner must submit "clear and convincing" evidence that the relationship is bona fide in light of the prior failure to disclose it to the Government. *See Matter of Ma*, 20 I&N Dec. 394, 398 (BIA 1991).

These examples involve allegations of fraud that can only be rebutted with "clear and convincing" evidence that the relationship is bona fide. *See, e.g.*, *Matter of Patel*, 19 I&N Dec. 774, 782−83 (BIA 1988). In marriage fraud cases, the standard of "clear and convincing" evidence is actually explicit in the statute at section 204(a)(2)(A)(ii) of the Act, 8 U.S.C. § 1154(a)(2)(A)(ii) (2012), whereas here, the Secretary's choice of standard of proof lacks any statutory basis. Moreover, aside from these two examples, the USCIS has cited no case where the "beyond a reasonable doubt" standard has been used.[1]

Based on the lack of explicit statutory or regulatory authority for the heightened standard, I would find that "beyond a reasonable doubt" is not an appropriate standard to apply in these cases. I further believe that we can review whether the Director fully considered and evaluated all of the evidence and clearly set forth the basis for denial of the visa petition. *See* Memorandum from Michael Aytes, Assoc. Dir., Domestic Operations, to USCIS officials, at 7 (Feb. 8, 2007) (stating that the adjudicator must clearly articulate the factual basis for the determination), *available at* http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/adamwalshact020807.pdf; *see also Whetstone v. INS*, 561 F.2d 1303, 1306 (9th Cir. 1977).

---

[1] The Adam Walsh Act provides for the civil commitment of "sexually dangerous person[s]" under 18 U.S.C. § 4248 (2012). Under § 4248(d), the Government has the burden of proving that the respondent is sexually dangerous by "clear and convincing evidence." *See United States v. Perez*, No. 5:11-HC-2015-BR, 2012 WL 5493614, at *3 (E.D.N.C. Nov. 13, 2012). This is a lesser standard than that which the USCIS applies to Adam Walsh Act visa petitions, even though the restriction of a person's liberty is at stake under § 4248. *Id.*; *see also United States v. Hunt*, 643 F. Supp. 2d 161, 179 (D. Mass. 2009) ("The clear and convincing evidence standard is an 'intermediate standard,' lying somewhere 'between preponderance of the evidence and proof beyond a reasonable doubt.'" (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979))).